# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| J.L., individually and on behalf of her minor daughter, G.L.,     Plaintiffs, <br><br> v. <br><br> WILLIAM M. DAVIES JR. CAREER AND TECHNICAL HIGH SCHOOL; MARY WATKINS, individually and in her capacity as Director, William M. Davies Jr. Career and Technical High School; DAVID CHAMPAGNE, individually and in his capacity as Supervisor of Student Management, William M. Davies Jr. Career and Technical High School; and JOHN AND JANE DOES 1-10, individually and in their official capacities,     Defendants. | C.A. No. 24-cv-543-MRD-PAS |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

When G.L. was a student at the William M. Davies Jr. Career and Technical High School ("Davies"), she was subjected to a sexual assault and harassment from a fellow student which ultimately led to the onset of physical and psychological ailments that impeded her ability to complete the educational programming of her choice at the school. G.L. brought several claims against the school as well as against the school's Director Mary Watkins and Supervisor of Student Management David Champagne in their individual and official capacities. Before the Court is the

Defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted, which the Court grants in part and denies in part.

## I.    BACKGROUND

In 2021, G.L. started high school at Davies, a public state-operated school, and participated in its Health Careers Program with a dream of becoming a registered nurse.  Compl. ¶¶ 3, 9, 10 (ECF No. 1).  Davies' Health Careers Program provided opportunities for students to graduate from high school with both Certified Nursing Assistant ("CNA") and Emergency Medical Technician ("EMT") licenses.  *Id.* ¶¶ 10, 14.  Watkins is responsible for the daily operations at Davies and Champagne is responsible for discipline over Davies students.  *Id.* ¶¶ 5, 7.

In December 2021, when G.L. was a freshman, she was sexually assaulted on the "late bus" by a Davies sophomore student she refers to as A.R.A.  *Id.* ¶¶ 16, 18. She reported the incident to Defendants Watkins and Champagne the next day.  *Id.* ¶ 20.  Over the next four years, A.R.A. repeatedly bothered G.L. while at school and, eventually, over social media.  *Id.* ¶¶ 34, 35, 37, 70, 71, 81.  G.L. developed significant mental health challenges and missed significant periods of school.  *Id.* ¶¶ 29, 30, 70. Over time, G.L. began suffering from seizures triggered by A.R.A.'s harassment of her, and ultimately received a diagnosis of Functional Neurological Disorder.  *Id.* ¶¶ 43-46, 53.  In response, Davies created a "504 plan"[1] for G.L. to identify specific

---

[1]  "A plan offered under Section 504 of the Rehabilitation Act provides accommodations for students with disabilities to participate in public school education but does not provide specialized instruction."  *Falmouth Sch. Dep't v. Doe*, 44 F.4th 23, 33 n.1 (1st Cir. 2022).

accommodations that would address her mental health challenges. *Id.* ¶¶ 31, 52. Despite the accommodations, during G.L.'s junior year, Davies did not allow her to participate in the clinical component of the CNA licensing program, supposedly because her seizures presented a danger to patients with whom G.L. would be working. *Id.* ¶¶ 58-65. It wasn't until her senior year that Davies allowed her to complete the clinical component of the program, which delayed her ability to obtain her EMT licensure. *Id.* ¶¶ 88, 89. According to G.L., Watkins and Champagne repeatedly failed to take any effective actions to prevent A.R.A. from harassing her. *Id.* ¶¶ 21, 22, 33, 38, 51, 82, 84, 92. Aggrieved, she reported the 2021 assault to the police and obtained a restraining order against A.R.A. *Id.* ¶¶ 72, 73.

In March 2024, G.L. and her mother, J.L., filed a formal Title IX complaint. *Id.* ¶¶ 80. While the Title IX investigation proceeded, J.L. (on behalf of herself and G.L.) filed a complaint against the Defendants. The plaintiffs assert several separate claims against one or more defendants: (1) failure to appropriately respond to sexual harassment in violation of Title IX, 20 U.S.C. § 1681; (2) various violations of G.L.'s right to equal protection under the Fourteenth Amendment (§ 1983 claim); (3) disability discrimination pursuant to Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"); (4) sex and disability discrimination in violation of Rhode Island's Civil Rights Act ("RICRA"); and (5) negligence. Compl. at 8-13. The Defendants' motion to dismiss argues that none of these claims state a plausible claim for relief. Defs.' Mot. at 11 (ECF No. 14).

## II.    LEGAL STANDARD

When this Court is asked to evaluate the plausibility of claims stated in a complaint, it starts by "isolat[ing] and ignor[ing] statements in the complaint that simply offer legal labels and conclusions or merely rehash[es] cause-of-action elements, then take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and [deciding] if they plausibly narrate a claim for relief." *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)). "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels [the Court] to draw on [its] judicial experience and common sense." *Id.* (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

## III.    DISCUSSION

Before the Court delves into its assessment of the plausibility of the plaintiffs' various claims, it acknowledges that the plaintiffs filed the Complaint when G.L. was a minor and G.L. is now an adult who can bring the surviving claims on her own behalf. The Court has assessed the claims alleged with G.L.'s change in status in mind. As the plaintiffs acknowledged in their opposition to the motion to dismiss, *see* Pls.' Opp'n at 4 n.1 (ECF No. 16), they should file an amended complaint to reflect this change in G.L.'s status.

A.      Title IX (Count I)

The plaintiffs bring this count against Davies only, alleging the school failed to appropriately respond to sexual harassment in violation of Title IX, 20 U.S.C. § 1681.[2]  Compl. at 8.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681.  "Sexual harassment is [a form of] discrimination in the school context under Title IX[;] . . . student-on-student harassment, if sufficiently severe, can . . . rise to the level of discrimination actionable under the statute."  *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).  "Title IX creates an implied private right of action against federal funding recipients for money damages caused by a recipient's violation of its obligations under the Title."  *Wadsworth v. Nguyen*, 129 F.4th 38, 69 (1st Cir. 2025) (quoting *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 7 (1st Cir. 2020)); *Davis*, 526 U.S. at 639-40.  A "recipient[] of federal funding may be liable for subjecting their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority."  *Davis*, 526 U.S. at 646-47 (cleaned up).  A federal funding recipient need not expel a student

---

[2] The Defendants also argue that J.L. lacks standing to bring an individual claim under this statute, but they cite no authority binding on this Court to support their argument.  Defs.' Mot. at 13-14.  It is not clear to the Court that J.L. is asserting a Title IX claim on her own behalf.  If the amended complaint asserts an individual Title IX claim for J.L., then the Defendants may renew their challenge to J.L.'s standing.

accused of misconduct in order to avoid liability and the Supreme Court cautions that courts in general "should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 648. The Court instructed that, to be "deliberately indifferent" to a student's harassment of another student, the school's "response to the harassment or lack thereof [must be] clearly unreasonable in light of the known circumstances." *Id.* Ultimately, "funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650.

The First Circuit uses three questions to determine whether Title IX liability is established: (1) did the plaintiff identify an "appropriate person" ("i.e., a school district official with the authority to take corrective measures in response to actual notice of sexual harassment"), (2) was the substance of the actual notice "sufficient to alert the school official of the possibility of . . . harassment," and (3) did that official "exhibit deliberate indifference to the harassment." *Wadsworth*, 129 F.4th at 69 (quoting *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1254 (11th Cir. 2010) and citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). However, discrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case, and a failure to plead that element is fatal. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002).

The Defendants contend the Plaintiffs' allegations fall short of stating a plausible claim for relief under this statute because the statements are so vague that the Court should consider them conclusory (and therefore not entitled to the presumption of truth at this stage). Defs.' Mot. at 2-3, 18-19. The Defendants also assert the Plaintiffs do not specifically allege that A.R.A.'s behavior was based on G.L.'s sex or gender, that his conduct was so pervasive as to deprive her of educational opportunities or benefits, and that the allegations about Davies' response "fall short" of the standard for deliberate indifference. Defs.' Mot. at 19; Defs.' Reply at 8, 10 (ECF No. 23). The Plaintiffs, in their opposition, emphasize that the focus of this Title IX claim is Davies' failure to adequately respond to A.R.A.'s allegedly pervasive harassing conduct because, when the initial step Davies took to prevent contact between the two students did not work, Davies' failure to subsequently implement a successful solution exhibited deliberate indifference to A.R.A.'s behavior and ultimately the effects on G.L.'s education. Pls.' Opp'n at 14-15, 18-20.

A review of all the allegations in the Complaint reveals several factual allegations indicating A.R.A. continued to harass G.L. throughout their tenure at Davies. *See, e.g.*, Compl. ¶¶ 34, 35, 37, 70, 71. G.L. alleges that she repeatedly notified Davies' teachers and administrators about A.R.A.'s conduct, that any action they took was ineffective, and that Davies was on notice that the measures they put in place to prevent contact between these two students were not effective. *See, e.g.*, *id.* ¶¶ 26, 38, 40, 51, 74, 82, 84, 92. G.L. then specifically alleges that she "was subjected to harassment based on her sex/gender in the form of unwanted sexual

attention, and stalking." *Id.* ¶ 97. As the Plaintiffs point out in their opposition, the Defendants' arguments in favor of dismissing this claim ignores several of the factual allegations in the complaint. Pls.' Opp'n at 18. Crediting all the factual allegations as true and drawing all reasonable inferences in the Plaintiffs' favor, *see Zell*, 957 F.3d at 7, the Court concludes the elements of a Title IX claim are plausibly pled, *see Wadsworth*, 129 F.4th at 69; *Frazier*, 276 F.3d at 66; *Davis*, 526 U.S. at 650.[3] The Defendants motion to dismiss as to Count I is therefore denied.

## B.   42 U.S.C. § 1983 - Violation of Fourteenth Amendment's Equal Protection Clause (Count II)[4]

The Plaintiffs allege Watkins and Champagne violated her Fourteenth Amendment equal protection rights "by failing to take action to remediate a hostile educational environment for G.L. based upon her sex/gender" and by Watkins' failure to "train, supervise, and discipline" Champagne thereby allowing Champagne to violate her equal protection rights. Compl. ¶¶ 107, 108. "To succeed [in a § 1983 claim], a plaintiff must show: (1) that the complained-of conduct was committed under the color of state law, and (2) that such conduct violated [their] constitutional or federal statutory rights." *Wadsworth*, 129 F.4th at 50 (quoting *Miller v. Town of*

---

[3] The Defendants argue that the Plaintiffs' damages for any liability found under this Count are limited to compensatory damages. *See* Defs.' Mot. at 21. The Court declines to engage with this argument at this time.

[4] The Complaint purports to bring this claim against all the Defendants, but as the Defendants argue in their motion to dismiss and the Plaintiffs concede in their opposition, this claim cannot be brought against Davies, an arm of the state of Rhode Island, R.I. Gen Laws § 16-45-6(d)(1) and 6(j), and not a "person" within the meaning of 42 U.S.C. § 1983. Compl. at 8-9; Defs.' Mot. at 22-23; Pls.' Opp'n at 20 n.6.

*Wenham*, 833 F.3d 46, 51 (1st Cir. 2016)). "It is well established that sex discrimination violates the Equal Protection Clause" and that "[s]exual harassment is a type of sex discrimination." *Id.* at 54 (citations omitted). To plausibly state this claim against the individual defendants, the Plaintiffs' allegations must state "that (1) G.L., compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* at 64 (quoting *Davis v. Coakley*, 802 F.3d 128, 132-33 (1st Cir. 2015)).

The Defendants argue that this claim should be dismissed because G.L. hasn't pled – as she must – factual allegations that she was given different or less protection than her peers because of her membership in a protected class. Defs.' Mot. at 3, 23; Defs.' Reply at 17-19. The Defendants also assert that the supervisory liability part of G.L.'s equal protection claim is not viable because G.L. has not alleged any facts to support this claim. Defs.' Mot. at 25. The plaintiffs counterargue that G.L. was not required, as a matter of law, to allege she was treated differently than her peers and that the facts she alleged to support her Title IX claim also suffice to plausibly allege the equal protection violation claim. Pls.' Opp'n at 23.

G.L.'s brief counterargument about the plausibility of this claim is not persuasive. The Court starts with G.L.'s claim that Watkins and Champagne failed to remediate a hostile educational environment. While G.L. does not rely on *Wadsworth* to support her contention that she need not allege the defendants treated

a similarly situated student differently, the Court notes that the First Circuit has indeed identified a scenario in which a plaintiff need not "necessarily" establish "a relevant comparator," but applied the alternative test to a factual scenario in which a student claimed the alleged sexual harassment perpetrator himself (the school's principal) had violated her equal protection rights. 129 F.4th at 54-55. In that same case, the appellate court applied the traditional test articulated above to the allegations against the school's social worker, who allegedly failed to stop the harassment when he was made aware. *See id.* at 64. G.L.'s claim against Watkins and Champagne are clearly more analogous to the *Wadsworth* social worker because G.L. does not allege that Watkins or Champagne harassed her. A review of all the allegations in the Complaint reveals that G.L. does not include any allegations that either Watkins or Champagne treated her differently than any other student "similarly situated" to her. *See id.* Therefore, G.L. has failed to plausibly state an equal protection violation claim for these defendants' alleged failure "to take action to remediate a hostile educational environment for G.L. based upon her sex/gender." Compl. ¶ 108.

Turning to the part of the claim in which the Plaintiffs allege Watkins failed to train, supervise, or discipline Champagne, G.L. was required to allege that Watkins had "some degree of control" over Champagne. *Wadsworth*, 129 F.4th at 63 (stating a plausible § 1983 claim for supervisory liability must allege one defendant had "some degree of control" over another defendant (quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999)). G.L. neither alleges that Watkins had any

supervisory control over Champagne nor provides any factual allegations from which the Court could infer Watkins had any degree of control over Champagne. The absence of any allegations to this effect dooms the plausibility of this part of her claim.

The Court concludes the Plaintiffs have failed to state a plausible claim that Watkins' and Champagne's conduct violated her equal protection rights and therefore grants the Defendants' motion to dismiss as to Count II.[5]

### C.    Section 504 of the Rehabilitation Act/ Title II of the ADA (Count V)

In this Count, the Plaintiffs claim that Davies and Watkins discriminated against her in violation of Section 504 of the Rehabilitation Act and Title II of the ADA when they did not allow her to participate in the clinical component of the CNA licensing program during her Junior year and would not provide a reasonable accommodation to allow her participation. Compl. ¶¶ 138-39. The Plaintiffs allege that the program's clinical component occurred at a nursing home and Davies did not allow G.L. to participate in this portion during her Junior Year because G.L.'s seizures meant she might be a danger to patients if she experienced a seizure while lifting a patient. *Id.* ¶¶ 60, 64. Davies deferred G.L.'s participation in the clinical portion until her Senior year. *Id.* ¶¶ 67, 69.

Both the ADA and Section 504 prohibit discrimination on the basis of a disability. 42 U.S.C. § 12132; 29 U.S.C. § 794. Title II of the ADA was "modeled on"

---

[5] The Court's conclusion means it need not reach the parties' arguments about qualified immunity. Defs.' Mot. at 26; Pls.' Opp'n at 23. *Cf. Wadsworth*, 129 F.4th at 58 (discussing whether qualified immunity barred plaintiff's viable claim against defendant after deeming claim had been plausibly pled).

section 504 and the courts "rely interchangeably on decisional law applying § 504." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 4 (1st Cir. 2000). "To state a claim for a violation of Title II, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability." *Toledo v. Sánchez*, 454 F.3d 24, 31 (1st Cir. 2006) (quoting *Parker,* 225 F.3d at 4). "Title II imposes an affirmative obligation on public entities to make their programs accessible to qualified individuals with disabilities, except where compliance would result in a fundamental alteration of services or impose an undue burden." *Id.* at 32 (quoting *Parker,* 225 F.3d at 5).

The U.S. Supreme Court has instructed that "Section 504 by its terms does not compel educational institutions to disregard the disabilities of . . . individuals or to make substantial modifications in their programs to allow [individuals with disabilities] to participate." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 405 (1979). Instead, it requires only that an 'otherwise qualified . . . individual [with a disability]' not be excluded from participation in a federally funded program 'solely by reason of his handicap,' indicating only that mere possession of a handicap is not a permissible ground for assuming an inability to function in a particular context." *Id.* (quoting 29 U.S.C. § 794(a)). Furthermore, "Section 504 imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to

accommodate [an individual with a disability]." *Id.* at 413. The First Circuit has acknowledged that "[t]he law does not require an academic program to compromise its integral criteria to accommodate a disabled individual." *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 154 (1st Cir. 1998), *abrogated on other grounds by Smith v. Spizzirri*, 601 U.S. 472 (2024).

The Defendants argue that the Plaintiffs have not plausibly alleged a claim under these statutes because the ability to lift a patient is an "essential task" for a CNA and G.L. could not show she was "otherwise qualified" for the CNA program if she could not perform that task. Defs.' Mot. at 29, 31. The Defendants also contend Davies was not required to make modifications to accommodate G.L. *Id.* at 29. The Plaintiff's counterargument focuses on the Defendants' alleged failure to provide a reasonable accommodation for her disability, emphasizing the fact-intensive nature of this inquiry. Pls.' Opp'n at 11-13.

After reviewing the allegations, the Court concludes the Plaintiffs fail to state a plausible claim for violation of Title II and Section 504 because the Complaint is missing an integral element to these claims: that she was denied participation in the CNA program. G.L. alleges she "began the academic portion" of the program and while she was not allowed to participate in the clinical portion of the program during her Junior year plans were set in place for her to complete this portion during her Senior year. Compl. ¶¶ 59-69. She did not allege that the Defendants denied her participation in this licensing program wholesale. *See Toledo*, 454 F.3d at 31 (listing that to state a viable claim plaintiffs must allege "exclu[sion] from participation").

Even if the deferred participation in this part of the licensing program would be considered a deprivation of participation, Davies provided an alternate schedule for G.L. to complete the program which would not "compromise" the "integral criteria" for CNA licensure. *Bercovitch*, 133 F.3d at 154. Davies was not required to lower or modify the standard of the program to accommodate a candidate for licensure who was not able to complete the training for one or more of the tasks at the precise time Davies had scheduled the clinical portion for that academic year. *See Davis*, 442 U.S. at 413. Because the program was not one of its Davies' own creations but one regulated by the State of Rhode Island, as G.L. acknowledges, *see* Pls.' Opp'n at 12, Davies likely did not have the authority to alter the criteria for the licensing program.

Accordingly, the Court grants the Defendants' motion to dismiss as to Count V.[6]

## D.    RICRA Claims (Counts III and VI)

In this Count, G.L. alleges that the Defendants engaged in discrimination against her in violation of RICRA on the basis of both sex "by subjecting her to a hostile educational environment," Compl. ¶ 117, and disability by denying her the ability to participate in the CNA program and failing to provide her a reasonable

---

[6] The Court notes the Defendants' argument that neither statute provides for individual liability and therefore the claim as against Watkins must be dismissed. Whether either statute provides for individual liability is still an open question in this Circuit, though at least two district courts agree with the Defendants. *See Doe v. City of Pawtucket*, 374 F. Supp. 3d 188, 198 (D.R.I. 2019), *vacated on other grounds sub nom. Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1 (1st Cir. 2020); *Toledo-Colon v. Puerto Rico*, 812 F. Supp. 2d 110, 117 (D.P.R. 2011). Because the Court concludes this claim is not plausibly pled, it need not weigh in on this open question of law.

accommodation to allow her participation, *id.* ¶¶ 146-47.  This Rhode Island statute provides that:

> All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

R.I. Gen. Laws § 42-112-1(a)).  The Rhode Island Supreme Court recognizes that RICRA was "enacted to provide protection against discrimination in employment." *Horn v. S. Union Co.*, 927 A.2d 292, 294 (R.I. 2007) (explaining why RICRA and Rhode Island's Fair Employment Practices Act relate to the same subject matter); *see Weeks v. 735 Putnam Pike Operations, LLC*, 85 A.3d 1147, 1159 (R.I. 2014) (acknowledging that RICRA was enacted to provide "broad protection against all forms of discrimination in all phases of employment" (quoting *Horn*, 927 A.2d at 293)).  As the Rhode Island Supreme Court has also noted, it has "primarily had the opportunity to review claims under RICRA in the employment context" or "analogize [a] broad claim under RICRA to that of an interference with contractual relations claim." *Doe v. Brown Univ.*, 253 A.3d 389, 398 (R.I. 2021); *DeCamp v. Dollar Tree Stores, Inc.*, 875 A.2d 13 (R.I. 2005); *Casey v. Town of Portsmouth*, 861 A.2d 1032 (R.I. 2004)).  As a colleague in this Court recently wrote, "RICRA has not been applied by the Rhode Island Courts to reach disability discrimination outside a contractual relationship, almost always in the employment context." *Ricci v. Rhode Island*, No. 20-CV-543-MSM-PAS, 2023 WL 4686025, at *13 (D.R.I. July 21, 2023).  Indeed, "there is

'precious little case law addressing the scope of RICRA in any respect,'" but the two cases in which RICRA has been invoked in this Court outside of an employment context have both been situations of contractual relationships." *Id.* (quoting *Liu v. Struili,* 36 F. Supp. 2d 452, 469 (D.R.I. 1999)).

The Defendants argue that the Plaintiffs' RICRA claims must be dismissed because they do not allege any kind of contractual relationship with Davies (and cannot because Davies is a public school) and RICRA liability cannot exist without a contractual relationship between the parties. Defs.' Mot. at 41, 43-44. The Plaintiffs do not dispute the absence of a contractual relationship with any of the Defendants but argues she does not need one in order to proceed on her RICRA claims. Pls.' Opp'n at 24-25. She counters that the plain language of RICRA indicates that a contract is not required, pointing to the part of the statute which guarantees to "[a]ll persons" "the full and equal benefit of all laws," § 42-112-1(a), and relying on out-of-circuit and/or nonbinding decisions. Pls.' Opp'n at 24-25.

The parties also focus on federal case law that engages with 42 U.S.C. § 1981, the analogous federal statute to RICRA because the Rhode Island state courts rely on the elements for a claim pursuant to 42 U.S.C. § 1981 when adjudicating a claim under RICRA. *See, e.g., Doe v. Brown Univ.,* 253 A.3d 389, 396, 398 (R.I. 2021) ("Specifically, to state a claim under the analogous federal statute, a plaintiff must show that: (1) he or she is a member of a protected class; (2) the defendant(s) discriminated against the plaintiff on the basis of this protected status; and (3) the discrimination implicates an activity listed in the statute." (quoting *Hammond v.*

16

*Kmart Corporation*, 733 F.3d 360, 362 (1st Cir. 2013))). But, even pursuant to the federal statute, the First Circuit instructs that, "to state a claim a plaintiff must 'initially identify an *impaired* contractual relationship, § 1981(b), under which the plaintiff has rights.'" *Hammond*, 733 F.3d at 364 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)).

G.L.'s RICRA claim is undisputedly not based on the impairment of a contractual relationship. While there may be a way to construe RICRA broadly in the way G.L. tacitly attempts in her papers, she has not provided any support from either the Rhode Island state courts or the courts within the First Circuit (or from the First Circuit itself) indicating that these courts would interpret the scope of RICRA as broadly as she advocates. The Court therefore grants the Defendants' motion to dismiss the RICRA claims, Counts III and VI.[7]

### E.    Negligence (Count IV)

The Plaintiffs' claim for negligence asserts that the Defendants had "a duty to exercise reasonable care in [her] supervision, custody, care, and education" and breached this duty "by failing to take reasonable actions to prevent [her] from suffering discrimination and harassment based on upon her sex/gender" and "fail[ed] to train, supervise, or discipline" the individual defendants. Compl. ¶¶ 123-25. "To prove a claim of negligence in Rhode Island, the plaintiff must set forth plausible facts showing (1) a duty owed by a defendant to a plaintiff; (2) a breach of that duty;

---

[7] The parties again engage with the Defendants' contention that G.L.'s claim against the individual defendants is not viable. Defs.' Mot at 40-41; Pls.' Opp'n at 25-27. As with the Section 504/Title II claim, the Court need not delve into this issue.

(3) the proximate cause between the conduct and the resulting injury; and (4) damages." *Doe*, 374 F. Supp. 3d at 202 (citing *Daniels v. Fluette*, 64 A.3d 302, 304-05 (R.I. 2013)). "Foreseeability is a vital part of any negligence claim, central to the element of breach of duty and proximate cause." *Id.*

The Defendants raise a litany of reasons why this Court should dismiss this claim. First, the Defendants argue that the Coverdell Teacher Protection Act, which imposes limitations on teacher, principal, and administrator liability, precludes this claim. *See* 20 U.S.C. §§ 7946(a), 7942(6)(a). Defs.' Mot. at 36. As the Plaintiffs point out in their opposition, Pls.' Opp'n at 31, and a colleague in this Court noted, this affirmative defense indeed immunizes Defendants from general negligence claims, but the Act specifically excludes "gross negligence" (among other acts). *Camelo v. Bristol-Warren Reg'l Sch. Dist.*, No. CV 19-660 WES, 2021 WL 949363, at *4, 6 (D.R.I. Mar. 12, 2021) (citing *Zell*, 957 F.3d at 18 n.19; §§ 7946(a), 7942(6)(a)). "Under the Rule 12(b)(6) standard, a defendant can prevail on an affirmative defense such as the Coverdell Act only where '(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude.'" *Id.* at *6 (quoting *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006)). The Plaintiffs' negligence claim is stated generally and broadly and at this early stage of litigation the Court cannot conclude the Defendants can prevail on this affirmative defense.

Second, the Defendants argue that this claim as against Watkins and Champagne should be dismissed on the grounds of qualified immunity protecting

18

them from liability.  Defs.' Mot. at 35.  "Qualified immunity protects government officials from trial and monetary liability unless the pleaded facts establish '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established' at the time of the challenged conduct." *Marrero-Méndez v. Calixto-Rodríguez*, 830 F.3d 38, 43 (1st Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  "If either of the two prongs is not met—i.e., if the facts do not show a constitutional violation or the right in question was not clearly established— the officer is immune."  *Id.*  The negligence claims alleged here are not alleging violations of a clearly established constitutional right and therefore qualified immunity will shield Watkins and Champagne from the Plaintiff's negligence claim. *See J.R. v. Gloria*, 593 F.3d 73, 82 (1st Cir. 2010) (concluding state agency employee were qualifiedly immune from plaintiffs' negligence claim against her in her individual capacity); *Hatch v. Town of Middletown*, 311 F.3d 83, 89-91 (1st Cir. 2002) (acknowledging that whether an individual defendant can be qualifiedly immune from a state law claim in their official capacity is somewhat of an open question of law in Rhode Island but concluding qualified immunity applied there because the wrongful conduct alleged was not a violation of a right clearly established at that time (citing *Ensey v. Culhane*, 727 A.2d 687 (R.I. 1999))).

Third, the Defendants ask the Court to dismiss the individual defendants, arguing that it is redundant to have claims proceed against both Davies as the institutional defendant as well as against the individual defendants in their official capacities.  Defs.' Mot. at 15-16.  The First Circuit has indicated that a claim against

19

an individual defendant in their official capacity is indeed redundant of the case against the institutional defendant. *Decotiis v. Whittemore*, 635 F.3d 22, 26, 38 n.19 (1st Cir. 2011) (affirming the district court's dismissal of the individual defendants on this ground on a motion to dismiss for failure to state a claim). The negligence claim against Watkins and Champagne in their official capacities is therefore also dismissed on this ground.[8]

Fourth, specifically with respect to the negligence claim focused on the Defendants' alleged failure to train, supervise, and discipline Watkins and Champagne, the Defendants argue that the Complaint is missing any specific allegations that can speak to this claim. Defs.' Mot. at 33-34. The Plaintiffs contend that there are sufficient factual allegations from which the Court could infer that "Davies itself failed to provide adequate training and supervision to Defendant Watkins and Champagne, and that Defendant Watkins in turn failed to supervise Champagne." Pls.' Opp'n at 29. The Court disagrees with the Plaintiffs that it could draw this inference based on the allegations in the Complaint, in part based on its discussion of supervisory liability above in Section III.B, and grants the Defendants' motion to dismiss this part of the Plaintiffs' negligence claim.

However, as the Plaintiffs argue in their opposition to this motion, the Defendants have not argued any substantive grounds to dismiss the claim as to her

---

[8] This conclusion obviates the need for the Court to consider whether the public duty doctrine shields Watkins or Champagne from liability under this claim, Defs.' Mot. at 35, as well as whether this case falls into the "special duty owed" exception to liability under this doctrine, Pls.' Opp'n at 30.

contention that the Defendants breached their duty to protect G.L. from harassment based on her sex and gender. Pls.' Opp'n at 28. In Rhode Island, school personnel may owe a special duty of care to the students, *see Morales*, 895 A.2d at 731, and, as noted above, there are sufficient facts from which the Court may infer that A.R.A.'s continued contact with G.L. was reasonably foreseeable based on his past conduct, *see Daniels*, 64 A.3d at 307 (stating that "a plaintiff seeking to hold a school liable for injuries resulting from the acts of another student must show that such acts could have been reasonably foreseen by the school"). The Defendants' motion is denied as to this part of the Plaintiffs' negligence claim.

Fifth, the Defendants argue the Plaintiffs have not alleged any specific facts about J.L.'s claimed loss of consortium and that this part of the negligence claim should be dismissed as a result. Defs.' Mot. at 39-40. As the plaintiffs contend, J.L. did include a loss of consortium allegation within the negligence count, *see* Pls.' Opp'n at 33 (citing Compl. ¶ 127). The Defendants did not provide any support that something more than including the allegation is required to survive a motion to dismiss. The Court therefore denies the invitation to dismiss J.L.'s claimed harm of loss of consortium.

To summarize, the Court grants the Defendants' motion to dismiss Count IV against Watkins and Champagne in both their individual and official capacities and against all Defendants with respect to the theory that their alleged failure to train, supervise, or discipline Watkins and Champagne makes Davies liable for negligence. The part of the Count IV claim that alleges negligence against Davies for the

Defendants' alleged "failure to take reasonable actions to prevent G.L. from suffering discrimination and harassment based on upon her sex/gender" and that J.L. suffered loss of consortium may proceed.

## IV.    CONCLUSION

For the reasons explained above, the Court GRANTS Defendants' Motion to Dismiss as to Counts II, III, V, VI, and a part of Count IV. The Court DENIES the motion as to Count I and a part of Count IV.


IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge


9/30/2025